UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

ANGELA BURDORF,                                    22-CR-50A

                Defendant.

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Angela Burdorf, ("the defendant"), is charged in a multicount indictment with having violated Title 18 U.S.C. §§ 1349, 1343 and 371 along with two forfeiture allegations.  Dkt. #1.  She has filed a motion wherein she seeks to have Counts One and Eighteen of the Indictment dismissed on the basis that they are time barred and dismissal of Counts Two through Seven of the Indictment claiming that they should be dismissed "for insufficiency since the charge cannot be sustained by the transfer of funds from one account controlled by the 'Operation' to another account in its

control." Dkt. #14-1.

The government has filed its response to these claims of the defendant wherein it asserts that the defendant has the burden of proving an affirmative defense, *i.e.*, withdrawal from the conspiracy which involves a factual determination by a jury and that Counts Two through Seventeen of the Indictment are facially sufficient thereby requiring a factual determination of the issues raised by the defendant in her motion to dismiss. Dkt. #17.

Oral argument on the defendant's motion was heard by this Court and the matter was taken under advisement.

**FACTUAL BACKGROUND**[1]

In Counts One and Eighteen of the Indictment, the defendant is charged with a conspiracy to commit wire fraud and conspiracy to defraud the United States. (18 U.S.C. §§ 1349 and 371 respectively). With respect to the conspiracy alleged in Count One of the Indictment, the defendant, along with a co-conspirator, managed a debt collection operation ("the Operation") during the period June 21, 2011 and May 17, 2017. Between March 2016 and May 17, 2017, defendant, in agreement with her co-conspirators, devised a scheme "to obtain money and property from victims by means

---

[1] The facts are taken from the Indictment and the defendant's motion papers and the government's response to same.

of false and fraudulent pretenses, representations and promises, which scheme also affected one or more financial institutions." Wire communications in interstate and foreign commerce were utilized by the defendant and her co-conspirators "for the purpose of executing the scheme in violation of 18 U.S.C. § 1343." "The object of the conspiracy was for the defendant and her co-conspirators to unjustly enrich themselves by fraudulently obtaining money and property from victims by means of false and unlawful pretenses, representations and promises."

On January 5, 2015, the FTC and the State of New York filed a complaint seeking a permanent injunction against the defendant and some of her co-conspirators so as to prevent further violations of the FTC Act, the FDCPA, New York General Business Law Articles 22-A and 29-H and Executive Law § 63(12). On January 5, 2015, the Hon. William M. Skretny issued a TRO that enjoined the defendant from collecting or attempting to collect a debt and appointed a Receiver for the business activities of the defendant who was given "complete control over the defendant's debt collection business."

On or about January 7, 2015, one of the defendant's co-conspirators created a business known as United Mediation Group ("UMG") and used two bank accounts for UMG. The defendant, along with another co-conspirator, agreed to pay a monthly fee to their fellow co-conspirator for the use of the business name UMG and to use the UMB bank accounts. Thereafter, on or about April 13, 2016, the defendant,

3

along with her co-conspirator, further arranged with another co-conspirator to allow an additional co-conspirator to be added as a signatory to the UMG bank accounts in order to provide access to those accounts to the defendant and her co-conspirator for use in the scheme to defraud.

During the period March 2016 and May 17, 2017, the defendant and her co-conspirator caused employees of UMG to use fraudulent and unlawful debt collection tactics to persuade debtors to make payments to MoneyGram through its Bank of New York Mellon bank account located in Pittsburgh, Pennsylvania.  The defendant and her co-conspirator then caused MoneyGram to process such payments and to remit funds to UMG's bank account located in the Western District of New York.

With respect to the conspiracy alleged in Count Eighteen of the Indictment, the defendant, along with a co-conspirator, operated a debt collection business during the period June 21, 2011 through April 27, 2017 wherein they diverted monies collected in their debt collection business to other debt collection business entities controlled by another co-conspirator "in order to avoid paying income taxes." The defendant and her co-conspirator did not report in full the funds received by the other entities from them on any tax returns.  Instead, the defendant and co-conspirator concealed these funds by making it appear that they were ordinary business expenses when in fact the defendant and her co-conspirators knew that such funds were converted to cash and returned to the defendant and her co-conspirator.

With respect to the substantive counts set forth in the Indictment, *i.e.*, Counts Two through Seventeen, the defendant, along with her co-conspirators, carried out a scheme between April 6, 2017 and on or about April 27, 2017 wherein they defrauded victims by obtaining money and property from them by means of false and fraudulent pretenses by means of wire communication in interstate commerce as set forth in described detail in each count.

## DISCUSSION AND ANALYSIS

### A. The Defendant's Claim of Withdrawal and Statue of Limitations of Defense As to Counts One and Eighteen

The defendant argues that she "effectively withdrew from the alleged conspiracy on January 5, 2015, as a matter of law when the TRO was issued." Dkt. #14-1, p. 7.  This alleged withdrawal, she claims, "started the 5 year statue of limitations clock" and as a result, "a viable criminal action should have been commenced by January 5, 2020."  Dkt. #14-1, p. 7.  Since the Indictment herein was not filed until April 5, 2022, two years "after the Statute of Limitations had run," the defendant asserts that Counts One and Eighteen should be dismissed as time barred." Dkt. #14-1, p. 7.

In contesting this position of the defendant, the government argues that the "defendant continued to unlawfully operate businesses in the debt collection industry in violation of the TRO" that had been issued by Judge Skretny on January 5, 2015, and represents that "proof at trial will establish that [the defendant] used businesses, including UMG which were owned by nominees, in contravention of the TRO and to continue to unlawfully collect on debts." As a result, the conspiracy to defraud continued by the defendant after the issuance of the TRO until at least the end of April 2017. Dkt. #17, pp. 2-3.

The defendant's claim that the issuance of the TRO by Judge Skretny on January 5, 2015 constituted an "effective withdrawal as a matter of law" is totally without legal merit. In order to effectively effectuate a withdrawal as a participant in a conspiracy, the burden is on the defendant to prove that she has taken affirmative steps to withdraw from the conspiracy. As the Court of Appeals for the Second Circuit stated in *United States v. Martinez*, 862 F.3d 223 (2d Cir), *cert. denied* 138 S.Ct. 489 (2017):

> For a defendant to show that he withdrew from the conspiracy, proof merely that he ceased conspiratorial activity is not enough . . . . He must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators.

*Id.* at 233; *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008), *cert. denied* 555 U.S. 1148 (2009).

6

Since the defense of withdrawal from a conspiracy presupposes that the defendant committed the offense, the defendant has the burden of proving such withdrawal. "Withdrawal with a statute of limitations defense does not place upon the prosecution a constitutional responsibility to prove that he did not withdraw." *Smith v. United States*, 568 U.S. 106, 109-112 (2013). The defendant has failed to put forth any evidence that would establish that she effectively withdrew from the conspiracies alleged in Counts One and Eighteen of the Indictment so as to validly establish that these charges were time barred. Merely claiming that the TRO issued on January 5, 2015 constituted a withdrawal as a matter of law is totally insufficient as a matter of law.

The charges in Counts One and Eighteen of the Indictment expressly state that between March 2016 and May 17, 2017, the defendant, along with her co-conspirator "caused MoneyGram to process payments and to remit funds to UMG's Northwest Bank account located in the W.D.N.Y." which then became available to the defendant. On a motion to dismiss the indictment, "the allegations in the indictment must be accepted as true." *United States v. Hoskins*, 73 F. Supp.3d 154, 159 (D. Conn. 2014); *United States v. Wey*, 2017 W.L. 237651 at *5 (S.D.N.Y. 2017); *United States v. Mango*, 199 F.3d 85, 89 (2d Cir. 1999). As the Court of Appeals for the Second Circuit stated:

> We hold that when a member of a conspiracy whose
> purpose is economic profit knowingly receives a share of the
> scheme's anticipated proceeds, whether actively by holding

7

>out his hand or passively by holding out his brokerage account, that conspirator engages in an overt act in furtherance of the conspiracy.

*United States v. Salmonese*, 352 F.3d 608, 611, 618 (2d Cir. 2003).

In outlining the contours of a withdrawal defense based on resignation from a criminal enterprise, the Second Circuit Court of Appeals has adopted the following principles: (1) "resignation from the enterprise does not, in and of itself, constitute a withdrawal from a conspiracy as a matter of law; (2) total severing of ties with the enterprise may constitute withdrawal from the conspiracy; however (3) even if the defendant completely severs his or her ties with the enterprise, the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations." *United States v. Berger*, 224 F.3d 107, 119 (2d Cir. 2000); *United States v. Antar*, 53 F.3d 568, 583 (3d Cir. 1995).

It is also pointed out that Count Eighteen of the Indictment charges a conspiracy to commit tax fraud. 18 U.S.C. § 371, 26 U.S.C. § 6531(8). The statute of limitations for this charge is six years. Nevertheless, the defendant's claim of withdrawal from debt collection activity because of the TRO of January 5, 2015 has nothing to do with a conspiracy to defraud the United States under its tax laws.

8

Lastly, the issue of withdrawal by the defendant from the conspiracies charged in Counts One and Eighteen of the Indictment and the application of the statute of limitations to these charges is a factual one that must be decided by a jury at trial. *United States v. Hoskins, supra*; *United States v. FNU LNU,* 2007 W.L. 1149261 at *2 (S.D.N.Y. 2007).

Therefore, it is recommended that the defendant's motion to dismiss Counts One and Eighteen of the Indictment be denied in all respects.

### B. The Defendant's Claim That Counts Two Through Seventeen of the Indictment Are Insufficient

The defendant asserts that the charges contained in Counts Two through Seventeen of the Indictment are legally insufficient since they "cannot be sustained by the transfer of funds from one account controlled by the 'Operation' to another account in its control."  Dkt. #14-1.  Therefore, these counts must be dismissed.  Dkt. #14-1, p. 9.

The government responds to this assertion by claiming that "the validity of an indictment is tested by its allegations, not by whether the government can prove its case," citing *Costello v. United States*, 350 U.S. 359, 363 (1956).  Dkt. #17, p. 13.

As the Second Circuit Court of Appeals has stated: "A court cannot test the sufficiency of the government's evidence on a motion to dismiss" the indictment. *United States v. Sampson*, 898 F.2d 270, 282 (2d Cir. 2018). The defendant's motion to dismiss Counts Two through Seventeen of the indictment does not dispute the allegations set forth in those counts, but rather, she is merely challenging the sufficiency of the government's evidence as to those counts. However, the sufficiency of the government's evidence can only be determined at trial. Rule 12(b)(2) of the Fed. R. Crim. P. bars the defendant's motion seeking to challenge the sufficiency of the government's evidence prior to trial. Because the government has not "made what can fairly be described as a full proffer of the evidence it intends to produce at trial, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Alfonso*, 143 F.3d 772, 776-777 (2d Cir. 1998); *United States v. Piper*, 2012 W.L. 4757696 at *2 (D. Vermont 2012); *United States v. Rankin*, 422 F. Supp.3d 564, 578 (D. Conn. 2019). Once again, "a court cannot test the sufficiency of the government's evidence on a motion to dismiss." *United States v. Sampson, supra.*

The United States Supreme Court has stated:

> In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and,

10

> secondly, "'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290; Rosen v. United States, 161 U.S. 29, 34." Hagner v United States, 285 US 427, 431, 76 L ed 861, 865, 52 S Ct 417. See Potter v United States, 155 US 438, 445, 39 L ed 214, 217, 15 S Ct 144; Bartell v United States, 227 US 427, 431, 57 L ed 583, 585, 33 S Ct 383; Berger v United States, 295 US 78, 82, 79 L ed 1314, 1318, 55 S Ct 629; United States v Debrow, 346 US 372, 377, 378, 98 L ed 92, 97, 74 S Ct 113.

*Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Hamling v. U.S.*, 418 U.S. 87 (1974); *U.S. v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).

The Indictment in this case meets the requirements emphasized by the Supreme Court in *Russell* and *Hamling*. As the Second Circuit Court of Appeals has stated:

> It bears recalling that "we have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms ) of the alleged crime." United States v. Pirro, 212 F.3d 86, 100 (2d Cir.2000) (internal quotation marks omitted) (emphasis supplied). Indeed, "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir.2002). Rather, "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (internal

11

quotation marks omitted).

*United States v. Bout*, 731 F.3d 233, 240-241 (2d Cir. 2013); *United States v. Stavroulakis*, 952 F.2d 686,693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992); *See also Russell v. United States*, 369 U.S. 749, 765-766 (1962).

Therefore, it is recommended that the defendant's motion to dismiss Counts Two through Seventeen of the Indictment be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:	Buffalo, New York
	March  28, 2023

>	*S/ H. Kenneth Schroeder, Jr.*
>	**H. KENNETH SCHROEDER, JR.**
>	**United States Magistrate Judge**