*IN THE DISTRICT COURT OF THE UNITED STATES*

*for the Western District of New York*

---

|  |  |
|---|---|
|  | **NOVEMBER 2021 GRAND JURY** <br> **(Impaneled November 5, 2021)** |
| **THE UNITED STATES OF AMERICA** | **INDICTMENT** |
| *-vs-* | Violations: <br> Title 18, United States Code, |
| **ANGELA BURDORF** | Sections 1349, 1343, and 2 <br> (4 Counts) |

## INTRODUCTION

**The Grand Jury Charges That:**

At all times relevant to this Indictment:

1. The defendant, **ANGELA BURDORF**, resided in Niagara Falls, New York, within the Western District of New York.

2. Greg MacKinnon, resided in Grand Island, New York, within the Western District of New York.

3. Joseph Ciffa, resided in Grand Island, New York, within the Western District of New York.

4. Anthony Faulise, resided in Tonawanda, New York, within the Western District of New York.

5. Laura Mazzi, resided in Kenmore, New York, within the Western District of New York.

6. Damario Turpin, resided in Atlanta, Georgia.

7. Members of the conspiracy established and operated various businesses to further the conspiracy, to avoid detection, and as an attempt to insulate members of the conspiracy from criminal and civil liability, including but not limited to:

    a. United Mediation Group ("UMG"); and

    b. Legal Consultant Services.

8. MoneyGram International, Inc. ("MoneyGram") was a cross-border peer-to-peer payments and money transfer company based in the United States, with headquarters in Dallas, Texas. MoneyGram had an operations center in St. Louis Park, Minnesota and regional and local offices around the world. MoneyGram processed payments through a bank account at the Bank of New York Mellon located in Pittsburgh, Pennsylvania.

9. Bank of New York Mellon was a financial institution as that term is defined pursuant to Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation. Bank of New York Mellon had bank branches located in Pittsburgh, Pennsylvania.

10. Northwest Bank was a financial institution as that term is defined pursuant to Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation. Northwest Bank had bank branches located in the Western District of New York. Northwest Bank acquired a portion of First Niagara Bank client accounts, including bank accounts in the name United Mediation Group, LLC (UMG).

11. Continuing to in or about October 2016, First Niagara Bank was a financial institution as that term is defined pursuant to Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation. First Niagara Bank had bank branches located in the Western District of New York.

12. KeyBank was a financial institution as that term is defined pursuant to Title 18, United States Code, Section 20, with deposits insured by the Federal Deposit Insurance Corporation. KeyBank had bank branches located in the Western District of New York.

## COUNT 1

**(Conspiracy to Commit Wire Fraud)**

The Grand Jury Further Charges That:

13. The allegations in the Introduction are re-alleged and incorporated by reference as though fully set forth herein.

14. Between in or about March 2016, and on or about May 17, 2017, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant,

**ANGELA BURDORF**, did knowingly, willfully, and unlawfully combine, conspire, and agree with Greg MacKinnon, Joseph Ciffa, Anthony Faulise, Laura Mazzi, Damario Turpin, and others, known and unknown to the Grand Jury, to devise a scheme and artifice to defraud others, known and unknown to the Grand Jury, and to obtain money and property from such victims by means of false and fraudulent pretenses, representations, and promises, which scheme and artifice also affected one or more financial institutions, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

15. The object of the conspiracy was for the defendant, **ANGELA BURDORF**, and her Co-Conspirators to unjustly enrich themselves by fraudulently obtaining money and property from victims known and unknown to the Grand Jury by means of false and fraudulent pretenses, representations, and promises.

16. As part of the conspiracy, between on or about March 2016, and on or about May 17, 2017, the defendant, **ANGELA BURDORF,** and Greg MacKinnon, managed a debt collection operation (hereafter referred to as "the Operation") in the Western District of New York and elsewhere. The Operation consisted of numerous individual businesses created to collect on debt and included businesses that processed debt payments.

17. As part of the conspiracy, the Operation collected millions of dollars from

thousands of victims across the United States. Employees of the Operation were typically paid a salary, in addition to bonuses, for meeting collection goals. Those who processed payments for the Operation and/or provided other support to the Operation, were paid a percentage of the payments processed, or through other payment agreements made with the defendant, **ANGELA BURDORF**, Greg MacKinnon, and Joseph Ciffa, persons known to the Grand Jury, and others, known and unknown to the Grand Jury, involved with the Operation.

18. As part of the conspiracy, prior to placing telephone calls to debtors, employees of the Operation typically used TLOxp, an online database, and other information systems software, to research and obtain personal information about debtors, such as valid telephone numbers, places of employment, addresses, and other identifying information.

19. As part of the conspiracy, in order to fraudulently coerce victims into paying purported debts, the Operation typically used a three-step process to collect on debts.

20. The first step of the process was completed by employees of the Operation, known as "point callers," all of whom used a variety of aliases. The "point callers" either connected alleged debtors with other employees, known as "live servers," or left messages for the alleged debtors to call back. When debtors called back, they would be connected to another set of employees commonly referred to as "live servers" or "collectors." Sometimes, the "point callers" referenced fictitious court filings, cases, complaints, charges, or arrest warrants in their calls and messages. Alleged debtors, relying on the false and fraudulent

representations, were induced to make payments to the Operation.

21. During the second step of the process, alleged debtors were referred to employees of the Operation, known as "collectors," or "live servers," to elaborate on the false information provided by the "point callers." "Collectors/live servers" made false representations to alleged debtors, including that: (1) the debtor was the subject of a criminal or felony complaint; (2) criminal and/or civil charges were being pursued; (3) once criminal charges were filed, an arrest warrant would be issued for the debtor's arrest; and (4) law enforcement would come to the debtor's home or place of employment to make an arrest. In truth and in fact, as the employees of the Operation well knew, these statements were false and fraudulent.

22. During the third step of the process, alleged debtors were routed to a third group of employees, known as "closers," or "attorneys," who spoke with the debtors and instructed them to make payment in order to obtain a court release number. Debtors were told a court release number would nullify impending legal action and prevent the debtor from being arrested or served. In truth and in fact, as the "closers/attorneys" of the Operation well knew, such representations were false and fraudulent. The "closers," who were not actual attorneys, often misrepresented themselves as attorneys. In an attempt to add credibility to this step of the scheme, the "closers" sometimes researched and impersonated actual attorneys.

23. As part of the conspiracy, once the alleged debtors had agreed to make payments, they were instructed by employees and/or associates of the Operation to make

payment via credit card, MoneyGram, or other means.

24. As part of the conspiracy, the Operation utilized merchant accounts in order to accept payment from debtors via credit card. Payments made via merchant accounts would then be transferred to bank accounts controlled by and accessible to the Operation.

25. As part of the conspiracy, the Operation utilized MoneyGram accounts in order to accept payment from debtors via MoneyGram, and to route the payments to bank accounts which were accessed by the Operation.

26. As part of the conspiracy, employees of the Operation, known and unknown to the Grand Jury, often collected and attempted to collect on past debts that the employees knew had already been paid in full by the debtor.

27. As part of the conspiracy, employees of the Operation, known and unknown to the Grand Jury, collected and attempted to collect amounts of money from debtors which exceeded the amounts of the debts actually owed by the debtors.

28. As part of the conspiracy, the defendant, **ANGELA BURDORF**, managed her own debt collection business under various names and at various locations, and processed payments for the business. In addition, **ANGELA BURDORF** also acted as a "payment processor" for other debt collection businesses associated with the Operation.

29. As part of the conspiracy, employees of the Operation, known and unknown to the Grand Jury, directed alleged debtors to make payment into or through accounts which were owned or operated by the defendant, **ANGELA BURDORF**. The defendant, **ANGELA BURDORF,** then remitted a percentage of the funds collected to Greg MacKinnon and/or other employees of the Operation, known and unknown to the Grand Jury, and enabled and allowed Greg MacKinnon and/or other employees of the Operation to make transactions to and from these accounts.

30. As part of the conspiracy, in return for such services, the defendant, **ANGELA BURDORF**, received a percentage of the amount collected by employees of the Operation, known and unknown to the Grand Jury, based on the payments processed through **ANGELA BURDORF'S** accounts.

31. As part of the conspiracy, the defendant, **ANGELA BURDORF**, at times provided office space and equipment for use by the Operation, provided access to TLOxp for use by employees of the Operation, opened corporations for use by the Operation, and provided and loaded debt portfolios into the Operation's computers.

32. As part of the conspiracy, the defendant, **ANGELA BURDORF**, provided the Operation with access to merchant accounts, opened in the name of other individuals and entities known to the Grand Jury.

33. As part of the conspiracy, the defendant, **ANGELA BURDORF,** provided the Operation and Greg MacKinnon access to bank accounts into which debtors could make payments. These bank accounts also accepted deposits from merchant accounts, into which debtors had made payments to the Operation.

34. In furtherance of the conspiracy, the following acts, among others, were committed by the defendant, **ANGELA BURDORF**, and others, known and unknown to the Grand Jury, in the Western District of New York and elsewhere:

   a. Between in or about March 2016, and on or about May 17, 2017, the defendant, **ANGELA BURDORF**, communicated with Greg MacKinnon and Joseph Ciffa, in furtherance of the conspiracy by telephone, in person, and via text message.

   b. The defendant, **ANGELA BURDORF**, and Greg MacKinnon agreed to pay Anthony Faulise a monthly fee to use the business name UMG as a nominee, and to use the UMG bank accounts.

   c. On or about April 13, 2016, the defendant, **ANGELA BURDORF**, and Greg MacKinnon further arranged with Anthony Faulise to allow Laura Mazzi, to be added as a signatory to the UMG bank accounts to provide the defendant, **ANGELA BURDORF**, and Greg MacKinnon access to the accounts for use in the scheme and artifice to defraud.

d. Between in or about March 2016, and on or about May 17, 2017, the defendant, **ANGELA BURDORF**, Greg MacKinnon, and Joseph Ciffa caused employees of UMG, known and unknown to the Grand Jury, to use fraudulent and unlawful debt collection tactics to persuade debtors to make payments to MoneyGram. Debtors made such payments through MoneyGram's Bank of New York Mellon bank account ending in 1356, located in Pittsburgh, Pennsylvania.

e. Between in or about March 2016, and on or about May 17, 2017, the defendant, **ANGELA BURDORF,** and Greg MacKinnon caused MoneyGram to process such payments and to remit funds to UMG's Northwest Bank account ending in 3750, located in the Western District of New York.

35. On or about the dates set forth below, the defendant, **ANGELA BURDORF**, and others, known and unknown to the Grand Jury, fraudulently caused MoneyGram to wire transfer money that MoneyGram received from victims, known and unknown to the Grand Jury, in interstate and foreign commerce as indicated below:

| DATE | AMOUNT | LOCATION |
| --- | --- | --- |
| 4/12/2017 | $5,794.92 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |
| 4/19/2017 | $8,268.06 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |

| DATE | AMOUNT | LOCATION |
|---|---|---|
| 4/25/2017 | $3,478.39 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |

**All in violation of Title 18, United States Code, Section 1349.**

## COUNTS 2-4

### (Wire Fraud)

### The Grand Jury Further Charges That:

36. The allegations in the Introduction and Count 1 are re-alleged and incorporated by reference as though fully set forth herein.

37. Between on or about April 6, 2017, and on or about April 27, 2017, in the Western District of New York and elsewhere, the defendant, **ANGELA BURDORF**, Greg MacKinnon, and Joseph Ciffa, persons known to the Grand Jury, did devise, and intend to devise, a scheme and artifice to defraud victims known and unknown to the Grand Jury, and to obtain money and property from said victims by means of false and fraudulent pretenses, representations, and promises, which scheme and artifice also affected one or more financial institutions, and for the purpose of executing such scheme and artifice, did transmit, and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, and pictures, as indicated below:

11

| COUNT | DATE | AMOUNT | DETAILS |
|---|---|---|---|
| 2 | 4/12/2017 | $5,794.92 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |
| 3 | 4/19/2017 | $8,268.06 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |
| 4 | 4/25/2017 | $3,478.39 | From MoneyGram's New York Bank of Mellon account ending in 1356, located in Pittsburgh, Pennsylvania, to Northwest Bank account ending in 3750, in the name of UMG, located in the Western District of New York. |

**All in violation of Title 18, United States Code, Sections 1343 and 2.**

DATED:     Buffalo, New York, April 5, 2022.

                                          TRINI E. ROSS
                                          United States Attorney

                                          ***S/ RUSSELL T. IPPOLITO, JR.***
BY:

                                          RUSSELL T. IPPOLITO, JR.
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          Western District of New York
                                          138 Delaware Avenue
                                          Buffalo, New York 14202
                                          716/843-5843
                                          Russell.Ippolito@usdoj.gov

A TRUE BILL:

***S/ FOREPERSON***

FOREPERSON